IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | |
| v. | § | Criminal Action No. H-09-342 |
| | § | |
| GILBERT LOPEZ *and* MARK | § | |
| KUHRT | § | |

## ORDER

Pending before the Court are the Government's Motion to Preclude Proposed Defense Expert Testimony (Document No. 974), Defendants' Motion in Limine to Exclude Lay Testimony Relating to Accounting Requirements Properly in the Purview of Experts (Document No. 986), and the Government's oral motion in limine to preclude the use of the word "trial" when referring to the trial of R. Allen Stanford. On September 24, 2012, the Court held a hearing to consider argument on these matters. After considering the motions, submissions, arguments made in open court, and applicable law this Court finds that the Government's motion to exclude expert testimony should be granted in part and denied in part, the Defendant's motion should be granted, and the Government's oral motion in limine should be denied.

## I. BACKGROUND

Defendants Gilbert T. Lopez, Jr. and Mark J. Kuhrt have been charged by superseding indictment with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and ten counts of wire fraud in violation of 18 U.S.C. § 1343. In the

superseding indictment, the Government alleges that Lopez and Kuhrt knowingly conspired to obtain money and property by fraudulent means and used wire communications in interstate and foreign commerce to execute the scheme.

Lopez, an accountant, joined Stanford Financial Group ("SFG") in September 1997 as its Assistant Controller. After joining SFG, Lopez worked in several positions within the company, and in September of 2006, Lopez was named SFG's Chief Accounting Officer. In 1997, Kuhrt was initially hired as an accountant by an SFG affiliate company, Stanford Leasing Company ("SLC"). After working for SLC and later SFG, Kuhrt became the Global Controller of Stanford Financial Group Global Management ("SFGGM"). Both SFG and SFGGM are affiliate companies to Stanford International Bank ("SIB").

The Government alleges that SIB and its affiliated companies sold Certificates of Deposit ("CDs"), marketing the CDs as "safe and secure investments" through its promotional materials, financial statements, and other published reports. The Government contends that the sales of the CDs was actually a scheme by Defendants and others to defraud depositors "in order to enrich themselves through the payment of wages, bonuses, and other monies."[1] The Government contends that Lopez and Kuhrt,

---

[1] *Superseding Indictment*, Document No. 905 at 4–5, ¶¶ 11, 13.

as Chief Accounting Officer and Global Controller of their respective companies, misrepresented information to investors in furtherance of the scheme to defraud.

## II. LAW & ANALYSIS

*I.    Government's Motion to Preclude Proposed Defense Expert Testimony*

Both Lopez and Kuhrt have indicated that they intend to call certified public accountants as expert witnesses to testify in their defense. Lopez has indicated that he will call Bala G. Dharan, Ph.D., CPA, and Kuhrt has identified Richard A. Jones, CPA as a potential expert witness. Accordingly, each defendant provided an expert report to the Government. Based on these reports, the Government has moved to preclude proposed testimony from both Dharan and Jones. At the hearing held on September 24, 2012, the Government explained that there are four areas of expert testimony that they move to preclude: (1) testimony regarding the roles and responsibilities of either Defendant or the roles and responsibilities of people in comparable positions within the industry; (2) testimony regarding what the Defendants knew, believed, or relied upon, or what someone in Defendants' place would have known, believed or relied upon; (3) testimony opining on whether such knowledge, belief, or reliance was reasonable; and (4) testimony that provides an opinion as to what documents show or do not show. Each of these areas will be addressed in turn.

### A. *"Roles and Responsibilities" Testimony*

The Government contends that any expert testimony regarding the roles or responsibilities of the Defendants or their counterparts in other companies within the industry is irrelevant and improper expert testimony.[2] The Government argues that fact witnesses will testify as to what the Defendants' actual roles and responsibilities were, which is the relevant inquiry. The Government asserts that expert testimony on this issue is irrelevant. The Defendants, on the other hand, anticipate that the Government will argue at trial that the Defendants' decisions not to do something, or their inaction, show evidence of intent to defraud. The Defendants, particularly Lopez, argue that expert testimony relating to the expectations and responsibilities of other similarly positioned professionals in the industry will show that these "inactions" are not evidence of an intent to defraud, but rather align with the roles and expectations of the profession.

---

[2] The Government cites *United States v. Tucker*, 345 F.3d 320, 326–32 (5th Cir. 2003), in support of their argument that such testimony is irrelevant and improper. There, the Fifth Circuit affirmed a district court's decision to exclude expert testimony where the expert attempted to testify that someone other than the defendant was legally responsible for completing regulatory documentation. The Fifth Circuit held that this testimony was irrelevant because the defendant did in fact complete the regulatory document and did so falsely. Under the circumstances of that case, the fact that the defendant actively decided to complete the document, whether his legal responsibility or not, negated any relevancy as to whether someone else should have filled out the paperwork. This Court finds that the holding of the *Tucker* case was limited to the specific facts presented and stands for the proposition that "roles and responsibilities" testimony must be weighed on a case-by-case basis to determine relevancy.

The Court finds that the motion should be granted in part and denied in part. Neither expert shall be able to opine on the specific roles or responsibilities of Lopez or Kuhrt, as this is more properly admitted through the testimony of fact witnesses. However, if the Government argues, admits evidence, or elicits testimony that attempts to show that Lopez's or Kuhrt's inactions are evidence of their intent to defraud, Defendants will be allowed to offer testimony from experts to rebut the "intent to defraud" evidence, suggesting that such inaction was common in the profession or was not required under the relevant industry standards. Any other expert testimony regarding the roles and responsibilities of others in the profession or about requirements of any accounting standard, including the General Accepted Accounting Principles (GAAP) or the General Accepted Auditing Standards (GAAS) shall be considered on a question-by-question basis by the Court. To merit admission, Defendants must establish how such testimony would be relevant and how it will aid the jury.

> B. *Testimony Regarding What Defendants Knew, Believed, or Relied Upon (or What Someone in the Defendants' Role Would Have Known, Believed, or Relied Upon)*

The Government argues that experts may not opine on what either Defendant knew, believed, or relied upon. Defendants concede that such testimony regarding the mental state of either Defendant would be improper, and both Defendants assure the Court that they do not anticipate eliciting such testimony. Nonetheless, the Government

5

argues that Defendants cannot circumvent this evidentiary hurdle by eliciting the same expert testimony regarding a hypothetical person in either Kuhrt's or Lopez's position.

The Court determines that the Government's motion should be granted in part, and denied in part. Federal Rule of Evidence 704(b) states that "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." FED. R. EVID. 704(b). Based on this rule, experts are not allowed to opine on the mental state of a Defendant if it relates to the *mens rea* of the crime. In other words, expert witnesses in this case cannot opine on whether Lopez or Kuhrt "knowingly" conspired with others, or had the requisite intent to defraud, as these are elements to the underlying offenses; the Government's motion is granted to the extent that Defendants' experts would attempt to testify regarding those issues.

In addition, any expert testimony opining on the actual knowledge or belief of either Defendant would be speculation. Therefore, any testimony regarding what Kuhrt or Lopez, themselves actually knew, believed, or relied upon is improper and must be excluded. The Government's motion is hereby granted as it relates to what the Defendants knew, believed, or relied upon.

Nonetheless, expert testimony is permissible under 704(b) if the testimony does not go to the *mens rea* of the crimes charged, but merely provides the expert's opinion

6

on a predicate matter in which the jury could "extropolate whether the defendants possessed the necessary *mens rea*." *See United States v. Morales*, 108 F.3d 1031, 1033 (9th Cir. 1997). As a result, the Court finds that expert testimony related to the general knowledge, understanding, or beliefs of a professional in a similar position to Kuhrt or Lopez, may be admissible if (1) a foundation can be laid showing that the expert has the requisite qualifications to opine on such matters; and (2) the Defendants have established relevance for such information. Therefore, the Government's motion—as it relates to what a hypothetical person in either Lopez's or Kuhrt's position would know, believe, or rely upon—must be denied at this time. The Court will consider the admissibility of this information on a question-by-question basis.

  C. *Testimony Opining on Whether Such Knowledge, Belief, or Reliance Was Reasonable*

The Government seeks to exclude any expert testimony that a certain knowledge, belief, or reliance on information was reasonable. Defendants, particularly Kuhrt, argue that experts are allowed to testify on the reasonableness of a belief or action within their specialized field. Having considered the arguments and the law, the Court determines that the Government's motion should be granted in part and denied in part.

Based on the Court's ruling above and the Defendants' own admissions,[3] neither Dharan nor Jones has the ability to opine on either Lopez's or Kuhrt's actual knowledge or beliefs. Therefore, neither expert has a basis to make an opinion as to whether Lopez's or Kuhrt's actual knowledge or beliefs were reasonable. Therefore, any testimony regarding whether Lopez's or Kuhrt's actual knowledge or beliefs were reasonable would fail to establish the requisite foundation, and should not be admitted. *See United States v. Scholl*, 166 F.3d 964, 973 (9th Cir. 1999) (affirming the exclusion of expert testimony related to the reasonableness of a defendant's belief when "the proffered experts had no personal knowledge of any predicate matter" relating to the defendant's belief). Accordingly, the Government's motion—as it relates to the "reasonableness" of Lopez's or Kuhrt's subjective knowledge or beliefs—is granted.

The Government also seeks to exclude expert testimony regarding the reasonableness of a hypothetical understanding, belief, or reliance. The Court has determined above that Defendants' experts shall be allowed to inform the jury of the general knowledge and beliefs of professionals in similar positions to Kuhrt and Lopez within the industry. Practically, testimony of this nature will establish the "reasonable" standard of the industry and, to that extent, the Court finds that the Government's

---

[3] Kuhrt specifically acknowledges that his expert could not "testify what Kuhrt *subjectively* believed." *Defendant Kuhrt's Response to Government's Motion to Exclude Defense Expert Witness*, Document No. 1002 at 13.

motion should be denied. The Court further determines that any expert testimony regarding whether a certain knowledge, belief, or reliance is reasonable as it relates to general practices in the accounting or financial industry is admissible, if (1) a foundation can be laid showing that the expert has the requisite qualifications to opine on such matters; and (2) the Defendants have established relevance for such information. Therefore, the Government's motion—as it relates to the reasonableness of a hypothetical person's knowledge, belief, or reliance—must be denied at this time. The Court will consider the admissibility of this information on a question-by-question basis.

*D.     Testimony as to What Documents Do or Do Not Show*

The Government argues that jurors can read and interpret financial documents introduced into evidence and come to their own conclusion about the documents' meaning and significance. Based on this, the Government contends that expert testimony interpreting these documents is unnecessary. Defendants disagree and argue that specialized knowledge is needed to understand much of the evidence at issue in this case, including certain documents and communications that relate to financial and accounting practices.

The Court determines that expert testimony may be needed to interpret the meaning and significance of certain documents, including, but not limited to, financial reports, accounting records, and other specialized documents. Accordingly, the

Government's motion is denied. This does not preclude the Government from making objections to specific questions or testimony during trial.

*II.    Defendants' Motion in Limine to Exclude Lay Testimony Relating to Accounting Requirements Properly in the Purview of Experts*

Defendants anticipate that the Government will seek to elicit testimony related to proper accounting practices and requirements from lay witnesses. In their response, and in argument in open court, the Government states that it "does not intend to elicit accounting opinions that result from a 'process of reasoning' that can only be mastered by experts in accounting," but that instead it will only elicit testimony from lay witnesses regarding the actual operations that occurred at SIB affiliated companies and those that are "based on a process of reasoning familiar in every day life."[4]

Federal Rule of Evidence 701 limits a lay witness's testimony to that which is "not based on scientific, technical, or other specialized knowledge." FED. R. EVID. 701(c). Therefore, testimony regarding specific accounting standards or principles outside general knowledge are not permitted by lay witnesses; the Defendants' motion is granted.

---

[4] *Government's Response to the Defendants' Pretrial Motions*, Document No. 1000 at 14.

*III.    Government's Oral Motion in Limine to Preclude the Use of the Word "Trial" When Referring to the Trial of R. Allen Stanford*

The Government also seeks to preclude the attorneys from using the word "trial" when referring to the trial of R. Allen Stanford for witness impeachment purposes or otherwise. Instead, the Government requests that the term "proceeding" or something similar be substituted. The Government contends that using the term "trial" will only create curiosity among the jurors as to the facts of the earlier trial: the identity of the defendants, the outcome, and other inadmissible information. Defendants oppose this motion and argue that, for impeachment purposes, they have a right to cross-examine witnesses by impeachment with inconsistent testimony given at R. Allen Stanford's trial and that use of the word "trial" is important in instilling the importance of the prior testimony. After hearing argument from all parties and reviewing the applicable law, the Court determines that this motion should be denied. Parties are allowed to use the word "trial" when cross-examining witnesses regarding previous testimony.

### III. CONCLUSION

Based on the foregoing, the Court

ORDERS that Government's Motion to Preclude Proposed Defense Expert Testimony (Document No. 974) is GRANTED IN PART and DENIED IN PART as stated herein. The Court further

ORDERS that Defendants' Motion in Limine to Exclude Lay Testimony Relating to Accounting Requirements Properly in the Purview of Experts (Document No. 986) is GRANTED. The Court further

ORDERS that the Government's Oral Motion in Limine to Preclude the Use of the Word "Trial" When Referring to the Trial of R. Allen Stanford is DENIED. The Court further

ORDERS that all relief not expressly granted herein is DENIED. Moreover, each of the rulings contained herein are preliminary rulings and are subject to argument and objection, if necessary, during trial.

SIGNED at Houston, Texas, on this __1__ day of October, 2012.

DAVID HITTNER
United States District Judge